# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20 CR 825 RLW(SPM) |
| | ) | |
| SAMUEL THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss the Indictment or, In the Alternative, For A Bill of Particulars (Doc. 53) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Counts 2 and 3 Of The Indictment (Doc. 54) be **DENIED.**

**IT IS FINALLY RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 55) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case will be set by separate order before the **Honorable Ronnie L. White**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: March 29, 2022.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20 CR 825 RLW(SPM) |
| | ) | |
| SAMUEL THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

On December 16, 2020, Defendant Samuel Thomas was charged in an indictment with possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl (Count 1); possession of a firearm in furtherance of drug trafficking (Count 2); and felon in possession of a firearm (Count 3). All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The following pretrial motions are currently pending before the undersigned: Defendant's Motion to Dismiss the Indictment or, In the Alternative, For A Bill of Particulars (Doc. 53); Defendant's Motion to Dismiss Counts 2 and 3 Of the Indictment (Doc. 54); and Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 55).

## BACKGROUND AND PROCEDURAL HISTORY

On September 10, 2021, in compliance with the pretrial motion deadlines imposed by the undersigned, defense counsel filed the above-referenced pretrial motions. On

October 6, 2021, the United States filed its responses opposing Thomas' pretrial motions (Docs. 62, 63 & 64). On November 29, 2021, the parties appeared before the undersigned for an evidentiary hearing. At the evidentiary hearing, counsel for both parties made clear that the evidence presented pertained exclusively to Thomas' suppression motion and the other two motions to dismiss were purely legal in nature and could be resolved based upon the parties' written submissions.  At the end of the evidentiary hearing counsel requested, and were granted, time to file post-hearing briefs after a transcript of the hearing was filed. Briefing by both parties was completed on February 24, 2022, and the matter is now fully briefed and ready for a ruling.

## I.    MOTION TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS (DOC. 53)

Thomas contends the indictment returned in this case is "fatally defective" and should be dismissed because it fails to assert with sufficient clarity when and where the alleged fentanyl and firearms were located and fails to show that Thomas had possession of the alleged fentanyl or firearms during the alleged incidents. Thomas argues, in the alternative, that because of these deficiencies he is entitled to a Bill of Particulars.

Motions to dismiss are, generally, governed by Rules 7 and 12 of the Federal Rules of Criminal Procedure. Under Rule 12, "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When there is a facial challenge to an indictment, the court must determine whether the indictment is legally sufficient. To be legally sufficient on its face, an indictment must contain all the essential elements of the offenses charged and must

fairly inform the defendant of the crime with which he is being charged in sufficient detail so that he may prepare a defense and invoke the double jeopardy clause in any future prosecutions based on the same conduct.  Fed. R. Crim. P. 7(c); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Bowie*, 618 F.3d 802, 817 (8th Cir. 2010); *United States v. Huggans*, 650 F. 3d 1210, 1217 (8th Cir. 2011).

"An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense . . . ." *Huggans*, 650 F.3d at 1218 (quoting *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009)). An indictment is also ordinarily deemed sufficient if it "tracks the statutory language." *United States v. Wearing*, 837 F.3d 905, 910 (8th Cir. 2016) (citing *United States v. Tebeau*, 713 F.3d 955, 962 (8th Cir. 2013)). In reviewing the sufficiency of an indictment, the government's allegations are accepted as true, without reference to allegations outside the indicting document. *United States v. Farm & Home Savings Association*, 932 F.2d 1256, 1259, n.3 (8th Cir. 1991).

The indictment in this case sets out the date of the alleged incident, the type of controlled substance at issue and, otherwise, closely tracks the statutory language in Title 21, United States Code, Section 841(a)(1) and Title 18 United States Code, Sections 924(c) and 922(g)(1). Despite Thomas's suggestions to the contrary, there is no statutory requirement that the indictment specify where the illegal items were located, and Thomas has failed to supply any other legal authority to support his suggestion that such a requirement exists. The language contained in the Indictment provides sufficient notice to

Thomas of the nature of the charges against him. As such, Thomas's motion to dismiss the indictment lacks merit and should be denied.

Thomas's alternative motion for a bill of particulars is also without merit. "If a defendant believes that an indictment dos does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *United States v. Livingstone,* 576 F.3d 881, 883 (8th Cir. 2009) (citing Fed. Crim. P. 7(f)). A bill of particulars "serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial" and to "avoid or minimize the danger of surprise at trial." *Id.* (quoting *United States v. Hernandez*, 299 F.3d 984, 989-990 (8th Cir. 2002)).  However, "a bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *Livingstone*, 576 F.3d at 883; *United States v. Huggans*, 650 F.3d 1210, 1220 (8th Cir. 2011).

Count 1of the indictment alleges that, on August 26, 2020, Thomas "possess[ed] with the intent to distribute 400 grams or more" of a mixture or substance containing Fentanyl, a Schedule II controlled substance. Count 2 alleges that, on the same date, Thomas possessed one or more firearms in furtherance of the crime alleged in Count 1. Count 3 alleges that, on the same date, Thomas possessed a firearm knowing that he had previously been convicted of one or more crimes punishable by a term of imprisonment exceeding a year. In addition, in its written response the United States noted that it has provided Thomas with all discovery Thomas is entitled to. This assertion appears to be substantiated by the United States' Letter Regarding Discovery, which was filed with the Court on January 8, 2021 (Doc. 19), and

Thomas failed to argue or otherwise suggest that he has not received this discovery from the United States.

In sum, the allegations in the indictment are neither vague nor indefinite. They are more than sufficient to give Thomas notice of the charges which he is facing. In addition, once the allegations in the indictment are combined with the disclosures that have been made to date, the undersigned finds no basis to conclude that Thomas lacks sufficient information to prepare a defense or to "avoid or minimize the danger of surprise at trial." *Livingstone*, 576 F.3d at 883. As such, the motion for a bill of particulars should also be denied.

## II.    MOTION TO DISMISS COUNTS II AND III OF THE INDICTMENT (DOC. 54)

Thomas moves to dismiss Counts 2 (possession of a firearm in furtherance of drug trafficking) and 3 (felon in possession of a firearm) of the indictment on grounds that the charged offenses are "unconstitutional under Missouri law" (Doc. 54). In support of his position, Thomas cites Missouri H.B.85/310, also known as the Second Amendment Protection Act, which was signed into law on June 12, 2021 (the "Act"). Specifically, Thomas asserts that Counts 2 and 3 must be dismissed because sections 1.410 - 1.485 of the Act declare as unconstitutional any "act forbidding the possession, ownership, use, or transfer of a firearm . . . by law abiding citizens" and forbids enforcement of any federal law that "infringe[s] the right to keep and bear arms as guaranteed by the Second Amendment and Missouri Constitution." *Id.*

Thomas's motion to dismiss fails, first, because the Act does not appear to apply to Thomas's case. As the United States points out in its response opposing Thomas's motion,

the statute's operative language states that "[t]he provisions of sections 1.410 to 1.485 shall be applicable to ***offenses occurring on or after August 28, 2021***," Mo. Rev. Stat. §1.480.5.2 (emphasis added). Thomas's offenses occurred in August 2020—one year before this date—and there is no indication that the Act applies retroactively. *See Univ. of Iowa Hosps. & Clinics v. Shalala*, 180 F.3d 943, 951 (8th Cir. 1999) (citation omitted) ("Because of retroactivity's disfavored status, statutes are presumed to operate only prospectively."). Thomas's failure to explain how the Act applies to any of the events undergirding the charges in Counts 2 and 3 is fatal to his motion to dismiss.

The conduct expressly charged in Count 2 and, by implication, in Count 3, also appears to have been expressly excluded from the Act's protection. By its terms, the Act limits its protection to "law-abiding citizens" and defines a "law abiding citizen" as "a person who is not otherwise precluded under state law from possessing a firearm." Mo. Rev. Stat. §1.480.1. Like the federal law Thomas is accused of violating in Count 2, Missouri law expressly prohibits a person from possessing a firearm while also knowingly in possession of a controlled substance. Mo. Rev. Stat. §571.030.1(11). Accepting the allegations in the indictment as true for purposes of this motion to dismiss, Thomas is not a "law-biding citizen" under the Act. *See Farm & Home Savings Association*, 932 F.2d at 1259, n.3 (holding the government's allegations are accepted as true when reviewing the sufficiency of an indictment challenged in a motion to dismiss). Because Thomas is not a "law abiding citizen" under the Act, the Act does not apply to him.

Even if the Act did somehow apply to this case, which is unlikely, Thomas's motion to dismiss lacks merit and should be denied. Despite Thomas's suggestions to the contrary, as the United States pointed out in its response opposing Thomas's motion, the Supremacy Clause of the U.S. Constitution prevents the State of Missouri from nullifying federal criminal laws. See U.S. Const. art. VI. cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Indeed, the Supreme Court has held, "in those areas where the Constitution grants the Federal Government the power to act, the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power." *United States v. Gillock*, 445 U.S. 360, 370 (1980). "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Hillsborough Cnty. Fla. v. Automated Med. Labys. Inc.*, 471 U.S. 707, 713 (1985).

Here, the federal statutes underlying the counts that Thomas challenges fall squarely within Congress's "power to act." *Gillock*, 445 U.S. at 370. The Supreme Court has upheld 21 U.S.C. § 841 as a valid exercise of Congress's Commerce Clause power, even as applied to the intrastate cultivation and possession of marijuana. *Gonzales v. Raich*, 454 U.S. 1, 22 (2005). And, along with every other court of appeals to consider the question, the Eighth Circuit has held that § 924(c) is a valid exercise of Congress's Commerce Clause power where the charge is based on a drug trafficking offense that is itself within

Congress's power to regulate. *United States v. Brown*, 72 F.3d 96, 97 (8th Cir. 1995) (per curiam); *see United States v. Cruz-Rivera*, 904 F.3d 63, 67 (1st Cir. 2018) (citing cases).

Thomas does not even attempt to argue that the statutes at issue in Counts 2 and 3 violate the Second Amendment, perhaps for good reason. The Supreme Court has made clear that the Second Amendment does not protect a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Court has also held that its decisions should not be read to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" and other "presumptively lawful" limitations. *Id.* at 626 & n.26. Accordingly, courts in this Circuit and elsewhere have repeatedly rejected Second Amendment challenges to § 924(c). *See United States v. Davis*, 347 F, App'x 267, 267 (8th Cir. 2009) (unpublished); *Garcia v. United States*, No. 08-00311-CR-W- FJG, 2014 WL 3698176, at *1-2 (W.D. Mo. July 25, 2014); *United States v. Bryant*, 711 F.3d 364, 368-70 (2d Cir. 2013); *United States v. Potter*, 630 F,3d 1260, 1261 (9th Cir. 2011) (per curiam); *United States v. Jackson*, 555 F,3d 635, 636 (7th Cir. 2009); *Costigan v. Yost*, 334 F. App'x 460, 462 (3d Cir. 2009); *United States v. Frazier*, 314 F. App'x 801, 807-08 (6th Cir. 2008). "It cannot seriously be contended that the Second Amendment guarantees a right to use a firearm in furtherance of drug trafficking." *Potter*, 630 F,3d at 1261.

Because the federal offenses that Defendant challenges are within Congress's power to legislate and are consistent with the Second Amendment, the Act is invalid to the extent it purports to invalidate the federal statutes at issue in Counts 2 and 3. "The government of

the United States . . . , though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, 'anything in the constitution or laws of any state to the contrary notwithstanding.'" *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 406 (1819).

### III.    MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (DOC. 55)

Thomas contends all evidence seized from his business and his statements to agents must be suppressed because the search warrant was not supported by probable cause; the warrant failed to describe the area to be searched with sufficient particularity; and the warrant affidavit omitted information material to the credibility and reliability of the confidential source referenced in the warrant affidavit. Thomas also contends that, because of this omission, he is entitled to a *Franks* hearing.

At the evidentiary hearing held on November 29, 2021, FBI Special Agent Aaron Ackland testified about the preparation and execution of the search warrant and the United States presented the search warrant and other documentary evidence. Counsel for Thomas questioned Agent Ackland but otherwise presented no additional evidence. After the hearing, a transcript of the evidentiary hearing was filed (Doc. 75) and the parties submitted post-hearing briefs (Docs. 79 & 81). Based on the following factual findings and, for the reasons set out below, I recommend that Thomas's motion be denied.

### A. FACTUAL FINDINGS

### 1. *The Search Warrant*

On August 24, 2020, FBI Special Agent Aaron Ackland applied for a warrant seeking authorization to search and seize, among other things, controlled substances, drug paraphernalia, documents, photographs, currency, and firearms and weapons from Scribble Tees, a business located at 1008 Sutter Avenue, in University City. Govt. Exh. 2. After being duly sworn, Agent Ackland signed a twenty-two-page affidavit in support of the search warrant application. *Id.* United States Magistrate Judge Patricia Cohen reviewed the application and supporting affidavit and issued the warrant on August 24, 2020.

In the warrant affidavit, Agent Ackland attested that he had been an FBI Special Agent since 2004 and outlined his relevant experience and training in the enforcement of federal narcotics laws. Agent Ackland also outlined his relevant experience and training in narcotics trafficking investigations, including the debriefing of informants as well as others with knowledge of the distribution and transportation of controlled substances. The warrant affidavit describes the crimes that were under investigation and the circumstances under which Agent Ackland and others began their investigation of Thomas and his business.

Specifically, Agent Ackland attested that he and other members of the FBI, and a Multi-Jurisdictional Task Force debriefed a confidential source (CS) who had known Thomas for several years. The CS had purchased narcotics from Thomas in the past and had been specifically told by Thomas that he was now distributing fentanyl. The affidavit

specifically noted that the CS had proven reliable through independently corroborated information, some of which was verified through audio or video recordings and physical surveillance. The affidavit further noted that, in a separate investigation, information provided by the CS was used to obtain federal search warrants which resulted in the seizure of bulk narcotics, currency, and firearms. The affidavit also indicated that, although the CS was initially working with the investigative team in exchange for judicial consideration on pending state charges, at the time of the affidavit, the CS was working in exchange for monetary compensation which had been minimal and conditioned on truthfulness and corroboration.

In the warrant affidavit Agent Ackland describes three attempts by agents to coordinate a controlled purchase of fentanyl by the CS from Thomas on December 9, 2019, January 16, 2020, and January 22, 2020. The January 16th attempt led agents to surveil the CS to the subject premises, Scribble Tees, which the CS described as a business belonging to Thomas. The warrant affidavit attests that a check of the Missouri Secretary of State and St. Louis County Assessor records showed the business under investigation operated under the name "Scribble Tee's" and was, in fact, owned by Thomas.

In the warrant affidavit Agent Ackland attests that, on August 17, 2020, the CS received a phone call from Thomas indicating he had received a quantity of fentanyl and wanted to meet the CS at his business location. Later, agents met with the CS, searched the CS and the CS's vehicle for contraband, and, upon receiving negative results, equipped the CS with an audio/video recorder. The CS then drove to meet Thomas at the premises while

under constant surveillance by the investigative team. The team observed the CS and Thomas enter the premises and the CS observed Thomas to be carrying a large semi-automatic handgun which Thomas stated he needed to "defend himself" and was "keeping it on just to be safe." Thomas showed the CS to the basement where he displayed approximately 10 ounces of fentanyl for sale and gave the CS a "sample" of fentanyl of approximately 3 grams, with the CS promising to return on a later date. During the meeting, Thomas also claimed he was expecting a couple of "bricks" of cocaine—which investigators understood to be kilograms of cocaine.

In the affidavit Agent Ackland attests that the investigative team members met the CS following the exchange and collected the fentanyl. The affidavit makes clear that although the video of the transaction was obscured, the audio was captured over the device, the CS was searched before and after the transactions, and the CS was under surveillance the entire time the CS traveled to and from the premises. Based upon the foregoing facts, Agent Ackland applied for a search warrant for Thomas's business.

### 2. *Execution of the Search Warrant*

On August 26, 2020, consistent with the time limits set out in the warrant, Agent Ackland and other law enforcement agents executed the warrant at Thomas's business at 1008 Sutter Avenue. Prior to the execution of the search warrant, the officers set up surveillance and observed Thomas to going in and out of 1008 Sutter Avenue. When the search warrant was executed, Thomas tried to flee from the rear door of 1008 Sutter Avenue but was ultimately detained. The officers searched the premises, including the

basement area and seized suspected fentanyl, suspected marijuana, tools consistent with drug trafficking such as a metal press with a hydraulic jack with suspected drug residue on it, multiple firearms, ammunition, mail, or other documents with Thomas's name on it, and cell phones.

Most of the seized items were discovered in the basement area of Thomas's business. Agent Ackland described the building in which Thomas's business was situated as a multi-unit, single-story commercial structure. Although the building itself contained multiple units, Agent Ackland credibly testified that the portion of the basement that was searched was accessible only from the main floor of Thomas's business.

### 3. *Interview of Thomas*

Following the execution of the search warrant, Agent Ackland and two other officers interviewed Thomas.  Thomas was first advised of his *Miranda* rights and, after verbally indicating he understood his rights, signed an Advice of Rights form which constituted a written acknowledgement that he understood his rights. Govt. Ex. 3.  Thomas did not appear to be under the influence of alcohol or suffering from any mental deficiencies at the time of the interview. Based on Agent Ackland's investigation to that point, he was aware that Thomas was in his late thirties and had prior criminal convictions. There were no threats made to Thomas during the interview. The agents advised Thomas that, if he so chose, he could aid their drug investigation and explained such cooperation would be considered in any potential prosecution. However, the officers made him no

promises of leniency in exchange for Thomas's statement. In response, Thomas made statements, some of which were incriminating.

### B. CONCLUSIONS OF LAW

Thomas contends suppression is necessary because the warrant was not supported by probable cause; the warrant failed to describe the area to be searched with sufficient particularity; and the warrant omitted information material to the credibility of the CS. Thomas also contends this omission entitles him to a *Franks* hearing.

### 1. *The Search Warrant is Supported by Probable Cause*

The Fourth Amendment requires that search warrants be based on probable cause. *United States v. Montes-Medina,* 570 F.3d 1052, 1059 (8th Cir. 2009). Affidavits for search warrants are reviewed using the "totality-of-the-circumstances" analysis. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The task of the issuing judge is to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for . . . concluding that probable cause existed." *Id.* at 238-39 (internal quotation marks omitted); *see also Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

When the judge relied solely on the affidavit presented to him or her, "'only that information which is found within the four corners of the affidavit may be considered in

determining the existence of probable cause.'" *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982)). Affidavits must be read in "a commonsense and realistic fashion." *United States v. Caldwell*, 864 F.2d 71, 74 (8th Cir. 1988) (citation omitted).

Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994); *Gates*, 462 U.S. at 238. "'Probable cause requires only a showing of fair probability, not hard certainties.'" *United States v. Tripp*, 370 F. App'x. 753, 757 (8th Cir. 2010) (quoting *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008)).

In this case, the facts set out in the warrant affidavit were more than sufficient to "justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *Bieri*, 21 F.3d at 815. The CS told investigators that Thomas was selling narcotics from his business and demonstrated, through telephone communications with Thomas, that Thomas was in fact offering to sell narcotics to the CS. Although three of the attempted buys did not take place, in August 2020 investigators were able to overhear a transaction in which Thomas offered the CS a small sample of fentanyl with a promise by the CS to return to purchase more. Investigators also overheard Thomas mention that he was expecting bricks of cocaine. The transaction took place at Thomas's business which agents were able to confirm, through an independent records check, was owned by Thomas.

The information provided to the agents came from a vetted CS who had known Thomas for years. The CS's information, as noted above, was then corroborated using audio recordings and physical surveillance as well as the agents' independent check of records. These facts blunt Thomas's challenge to the CS's reliability. Indeed, where the search warrant affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to, but is not dispositive of, the probable cause determination. *Gates,* 462 U.S. at 230. However, "where the informant's information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992). This is because "an informant who is correct about some things more likely will be correct about critical unverified facts." *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986) (citing *Spinelli v. United States*, 393 U.S. 410, 427 (1969)); *Gates* 462 U.S. at 233-34.

Thomas's motion to suppress should be denied because the information contained in the four corners of the warrant and affidavit was more than sufficient to supply probable cause in support of the issuance of a warrant for Thomas's business.

## 2. *The Warrant Sufficiently Describes The Place To Be Searched*

Thomas argues the search warrant for 1008 Sutter Avenue was fatally flawed because it failed to sufficiently describe the location to be searched. In particular, Thomas contends the warrant failed to explicitly authorize a search of the basement portion of his business. However, it is well-settled that "[w]hen a warrant specifically

mentions certain structures, it authorizes a search of these structures, and, by implication, any other vehicles, structures, or property not noticeably separate from them." *United States v. Pennington*, 287 F.3d 739, 744- 45 (8th Cir.) (quotation omitted), cert. denied, 537 U.S. 1022 (2002). Indeed, an authorized search of "the premises" or "the property" authorizes a search of the entire premises, including any other building or vehicles found on the premises. *United States v. Ross*, 456 U.S. 798, 820 (1982).

Here, the factual findings demonstrate that the basement was attached to the business and was accessible only through the main floor of Thomas's business. In addition, the warrant affidavit specifically attests that when the CS met with Thomas and obtained a three-ounce "sample" of fentanyl, that transaction took place in the basement of Thomas's business. This suggests that the basement was within the scope of the search authority granted by the Court. For the above reasons, Thomas's attack on the particularity of the search warrant lacks merit and cannot serve as a basis for suppression.

### 3. *The Good Faith Exception Applies Even If the Affidavit Falls Short of Establishing Probable Cause*

Even if the warrant affidavit somehow fell short of supplying probable cause, the good faith exception under *United States v. Leon*, 468 U.S. 897, 922 (1984), applies. *Leon* held that evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on the search warrant issued by a neutral and detached judge need not be excluded as a matter of law. *Id.* In the absence of an allegation that the issuing judge abandoned her detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have

harbored an objectively reasonable belief in the existence of probable cause. *Id.* at 926.

Here, Thomas does not allege that Judge Cohen abandoned her judicial role in issuing the warrant. Instead, Thomas appears to suggest that Agent Ackland was dishonest or reckless in preparing the warrant affidavit and, as a result, he is entitled to a hearing under *Franks v. Delaware.* However, for the reasons discussed below, Thomas has not established that Agent Ackland was dishonest or reckless in preparing the warrant affidavit or that he is otherwise entitled to a *Franks* hearing. As such, the motion to suppress should be denied.

### 4. *Thomas Has Not Established He Is Entitled To A Franks Hearing*

Thomas asserts he is entitled to challenge the validity of the search warrant at an evidentiary hearing under *Franks v. Delaware,* 438 U.S. 154 (1978). Under *Franks,* a criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. *See Franks,* 438 U.S. at 155-56. However, to gain such a hearing, a defendant must show both (1) that the affiant made a false statement or material omission "knowingly and intentionally" or with "reckless disregard for the truth" and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *See id.* at 155-56; s*ee also United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (affirming denial of *Franks* hearing notwithstanding district court's finding of several misrepresentations and omissions in the search warrant; stating, "the affidavit established probable cause even absent [the] misrepresentations and

including the omitted information"). The Eighth Circuit has repeatedly recognized that "[t]he requirement of a substantial preliminary showing is not lightly met." *Id.* at 898 (quoting *United States v. Mathison,* 157 F.3d 541, 548 (8th Cir. 1998)).

In determining whether a defendant has made the requisite preliminary showing required by *Franks* to justify a hearing, "[a]llegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (citing *Franks*, 438 U.S. at 171). Rather, the test is "'whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* (quoting *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010)). That difficult standard has not been met in this case.

In this case, Thomas contends the affidavit omitted the fact that the CS had a pending state case in the State courts at the time he was working for the government and hoping for leniency in his state case—a factor that goes to the reliability of the CS. However, the evidence presented at the evidentiary hearing rebuts Thomas's assertion. As the foregoing factual findings demonstrate, contrary to Thomas's contention, the warrant affidavit specifically attests that the CS had proven reliable through independently corroborated information, some of which was verified through audio or video recordings and physical surveillance. The affidavit further noted that, in a separate investigation, information provided by the CS was used to obtain federal search warrants which resulted in the seizure of bulk narcotics, currency, and firearms. The affidavit also indicated that,

although the CS was initially working with the investigative team in exchange for judicial consideration on pending state charges, at the time of the affidavit, the CS was working in exchange for monetary compensation which had been minimal and conditioned on truthfulness and corroboration.

Even if the warrant affidavit had omitted information about the CS's prior state charges and work for the government for compensation, which it did not, such an omission would not be fatal or otherwise entitle Thomas to a *Franks* hearing. The evidence in this case clearly demonstrated that the agents corroborated the information provided by the CS with, among other things, audio recordings and physical surveillance. "[W]here the informant's information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." *Humphreys*, 982 F.2d at 259.

5. ***Thomas's Statements Were Not Obtained In Violation of the Fourth or Fifth Amendment***

Thomas also contends his statements should be suppressed, but the specific legal basis for this argument is unclear. Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment may not be introduced at trial to prove a defendant's guilt. *Elkins v. United States,* 364 U.S. 206, 223-24 (1960) (evidence obtained as the result of an unreasonable search and seizure by state officers cannot be used against defendant in federal court). The purpose of the exclusionary rule is to deter constitutional violations. *See Leon,* 468 U.S. at 906. A court may admit evidence that would not have been discovered but for official misconduct only if the causal connection between the illegal conduct and the acquisition of the evidence is sufficiently attenuated to purge the evidence of its initial taint.

*See Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963); *Brown v. Illinois,* 422 U.S. 590, 603-04 (1975) (holding that in determining whether the causal chain has been sufficiently attenuated courts should consider how much time elapsed between the illegality and the acquisition of the evidence, the presence of intervening circumstances, and the purpose and flagrancy of the official conduct). The exclusionary rule applies to verbal statements obtained as a result of official misconduct as well as to the more traditional seizure of physical evidence. *United States v. Yousif,* 308 F.3d 820, 832 (8th Cir. 2002) ("Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search.").

For the reasons set out above, the undersigned finds no Fourth Amendment violation. The search of Thomas's business was conducted pursuant to a search warrant issued by a United States Magistrate Judge and supported by probable cause. As such, Thomas may not avail himself of the Fourth Amendment as a basis for suppression of statements he made to the investigative team after the search warrant was executed.

Thomas has also failed to demonstrate that agents violated the Fifth Amendment in obtaining his statements. Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or

psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. Unless suspects are warned of their Fifth Amendment rights, any pretrial statements elicited from them are inadmissible at trial. *Id.* at 492.

It is well-established that the privilege against self-incrimination can be waived. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). To establish a valid waiver, the Government must demonstrate by a preponderance of the evidence that "the waiver was knowing, intelligent, and voluntary[.]" *Id.* The standard for determining the voluntariness of either a waiver of *Miranda* rights and/or a statement is the same. *Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)). This determination must be made by looking at the totality of the circumstances, including both "the conduct of the officers and the characteristics of the accused." *LeBrun*, 363 F.3d at 724. Factors include, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera,* 389 F.3d 772, 779 (8th Cir. 2004)).

Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *LeBrun,* 363 F.3d at 724, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

As the foregoing factual findings demonstrate, after execution of the search warrant, Agent Ackland and two other officers interviewed Thomas, who was present at the time the search was executed.  Before interviewing Thomas, the agents advised Thomas of his *Miranda* rights and read Thomas his rights from an Advice of Rights form. Thomas indicated that he understood his rights against self-incrimination and to an attorney.

Based on the factual findings, there is no credible evidence to suggest that Thomas's statements, all made post-*Miranda* warning*,* were involuntary. As set out above, the evidence demonstrates that Agent Ackland advised Thomas of his rights; that Thomas understood his rights and signaled his understanding by signing the Advice of Rights form. *See* Govt. Ex. 3.  Based on Agent Ackland's credible testimony, it appears that Thomas's interactions with the agents were cordial and there was no evidence presented to suggest that Agent Ackland or any other officer threatened or intimidated Thomas in any way. Agent Ackland testified, credibly, that when he questioned Thomas, he did not have his gun drawn, did not make any promises, and did not threaten or attempt to intimidate Thomas. Although

the atmosphere in the unmarked patrol car in which Thomas was questioned was clearly dominated by three agents, there is no evidence that the agents engaged in any strategies or strong-arm tactics and/or dragged-out Thomas's questioning such that Thomas's will was overborne. Thomas did not appear to be under the influence of alcohol or suffering from any mental deficiencies at the time of the interview. Based on Agent Ackland's investigation to that point, he was aware that Thomas was in his late thirties and had prior criminal convictions. Because Thomas's statements to the agents were voluntarily made after he was advised of his *Miranda* rights, Thomas's motion to suppress his statements should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's pending pretrial motions lack merit and should be denied.

Dated: March 29, 2022.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE